Randall B. KNESE, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 83822.

Supreme Court of Missouri,
En Banc.

Aug. 27, 2002.

As Modified on Denial of Rehearing
Oct. 22, 2002.

Janet M. Thompson, Assistant Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, for Respondent.

DUANE BENTON, Judge.

A jury convicted Randall B. Knese of first-degree murder and attempted forcible rape, and he was sentenced to death. On direct appeal, this Court affirmed. *State v. Knese,* 985 S.W.2d 759 (Mo. banc), *cert. denied,* 526 U.S. 1136, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999).

Defendant then moved for post-conviction relief, which was denied. *Rule 29.15.* This Court has jurisdiction of the appeal. *Mo. Const. art. V, sec. 10; order of June 16, 1988.* Affirmed in part, and reversed in part.

### I. Facts

On direct appeal, this Court stated the following facts.

On the morning of March 23, 1996, neighbors observed a belligerent Knese in the streets, half-dressed, screaming, and combative. Other than minor scratches on his face, he did not appear injured. He jumped on the hood of a moving car, was dragged and left lying in the road. The police were called.

When police asked how he was injured, Knese stated that the "devil had come to get him," and "the bitch tried to kill" him. A second officer, investigating the Knese home, discovered the body of Karin Knese on the floor.

Knese was taken to the hospital, and advised of his Miranda rights, which he waived. Knese made four statements to the police regarding the murder—detailing the facts summarized in the next two paragraphs.

He admitted killing his spouse. Angry about his drug use, she had decided to sleep in a separate room. Early the next morning, after ingesting cocaine, he attempted to make up. Not wanting to be bothered, she pushed him off the couch where she was sleeping. Knese attempted "foreplay;" she protested; he pulled off her pants and panties. Climbing on top of her, he attempted to rape her, but failed because he could not sustain an erection.

A fight ensued. She screamed "rape." Knese put one hand over her mouth while squeezing her neck with the other. She grabbed a glass lampshade and swung. Knese blocked the swing with his arm, shattering the lampshade. She picked up a piece of glass and swung again, cutting his palm. Knese took the glass and slashed her neck. The two fell to the floor, where Knese again strangled her. His hold was so tight that his thumb went through her skin. He bit her neck. When she put a finger in his eye, he headbutted her. Finally, Knese stood up, kicked her head, and stood on her neck for five or ten minutes.

Following trial, the jury convicted Knese of attempted rape, sentencing him to twenty years imprisonment, and first degree murder, recommending the death penalty. On June 7, 1999, Knese filed for post-conviction relief.

## II. Standard of Review

■ This Court reviews post-conviction cases to determine whether the findings and conclusions of the trial court are clearly erroneous. *Rule 29.15(k)*. "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). Defendant must prove his claims by a preponderance of the evidence. *Rule 29.15(i)*.

■ To establish that counsel was ineffective, the defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant, which deprived him of a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). The reviewing court presumes that the trial attorney's conduct was reasonable, and was not ineffective. *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001), *cert. denied*, — U.S. ——, 122 S.Ct. 2341, 153 L.Ed.2d 169 (2002). Reasonable choices of trial strategy cannot be the basis for a claim of ineffective assistance. *Id.*

■ The motion court need not hold an evidentiary hearing unless: 1) the movant cites facts, not conclusions, that if true would entitle the movant to relief; 2) the factual allegations are not refuted by the record; and 3) the matters complained of prejudiced the movant. *State v. Ferguson*, 20 S.W.3d 485, 503 (Mo. banc), *cert. denied*, 531 U.S. 1019, 121 S.Ct. 582, 148 L.Ed.2d 499 (2000).

## III. Unqualified Jurors

Knese argues that his counsel, was ineffective for not striking two jurors as biased and unqualified. Counsel has been a

member of the Missouri bar since 1967, minus a nine-and-a-half-year disbarment. He tried over 20 criminal cases—including several capital cases.

In preparation for voir dire, counsel reviewed the questionnaires completed by the venire. However, he did not review those received on the morning of trial. Two of these were from (eventual) jurors Dennis K. Gray and Richard R. Maloney. The questionnaires requested opinions on crime and the death penalty. Gray—the foreman—believes our laws are "way too soft" on criminals. His solution to crime is to "build more jails," and give out longer sentences and fewer paroles. Regarding the death penalty he stated: "make executions public. If a criminal knew he was being executed in a public square in front of thousands of people, he might [think] twice about committing a murder." Maloney stated that he disfavored "endless appeals," "parole boards," "good time," and "clergy to pamper a killer," and wrote: "if he is found guilty, do it."

Counsel did not read these questionnaires until after trial. He testified that when he read Gray's responses: "I about vomited;" "I missed it and there is no chance that I would have left [Gray] on a jury if I would have seen it ahead of time." Gray "would have been my first strike … the mistake in this case, I believe, is the most egregious mistake I've ever made in the trial of a case. It could well have had catastrophic consequences for my client and there's no excuse for it." Counsel did not question Gray directly. The court collectively asked the venire one question about following the court's instructions: "Is there anybody that could not follow the Court's instructions with respect to the range of punishment? Basically folks, that is what I'm asking you is the death penalty question. Is there anybody here that feels that they could not follow the Court's in-

structions?" See *State v. Nicklasson,* 967 S.W.2d 596, 611 (Mo. banc), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 549, 142 L.Ed.2d 457 (1998). Gray did not respond to the court's question.

As for Maloney's questionnaire, counsel testified that he was "flabbergasted;" "for any criminal defense lawyer … to leave a man who responds like he did … is just an egregious error, and especially in a case like this;" he does not have "a ghost of a chance of being fair and—fair and impartial." Counsel would have struck Maloney. He did not question Maloney directly. As a member of the venire, Maloney did not respond to the general question—asked by the court—quoted above about following the court's instructions.

■■■ A defendant has a right to a fair and impartial jury. *U.S. Const. amends. VI, XIV; Mo. Const. art. I, sec. 18(a).* One aspect of this right is adequate voir dire to identify unqualified jurors. *Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992); *State v. Clark,* 981 S.W.2d 143, 146 (Mo. banc 1998). To that end, a veniremember should be asked if he or she holds any prejudices or biases that would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589 (1980). This inquiry is meant to reveal whether a juror can set aside any prejudices and impartially fulfill his obligations as a juror. *Wainwright v. Witt,* 469 U.S. 412, 421–22, 105 S.Ct. 844, 850, 83 L.Ed.2d 841, 851 (1985); *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 1776–77, 20 L.Ed.2d 776, 784–85 (1968).

■■■ Here, counsel did not complete the initial inquiry—reading the questionnaires—to determine whether Gray and Maloney were qualified to be jurors.

Their responses suggest—although not conclusively establishing—that they would automatically vote to impose death after a murder conviction. See *State v. Middleton*, 995 S.W.2d 443, 460–61 (Mo. banc), *cert. denied*, 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999). At a minimum, counsel should have read the questionnaires, and voir dired to determine whether they could serve as jurors. Failure to do so is ineffective assistance of counsel.

■■■ This complete failure in jury selection is a structural error. *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 2057, 95 L.Ed.2d 622, 640 (1987); cf. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991). On direct appeal, the United States Supreme Court, as a "per se rule," requires vacating a death sentence imposed by a jury whose composition is affected by *Witherspoon* error. *Gray*, 481 U.S. at 660, 107 S.Ct. 2045.

In this post-conviction proceeding, Knese must show by a preponderance of the evidence that counsel's deficient performance prejudiced the defense. *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). Here, there is reasonable probability—sufficient to undermine confidence in the outcome—that Knese was prejudiced by his counsel's failure to read the questionnaires and voir dire the two jurors. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

The error in this case affected penalty phase only. Nothing in either questionnaire indicated a predisposition by Gray or Maloney to automatically vote for guilt or innocence. The judgment is reversed as to the penalty phase, and the case is remanded.

## IV.  Cocaine Defense

As to the guilt phase, Knese argues that counsel was ineffective for not investigating and presenting evidence at the suppression hearing, and throughout trial, that Knese was high on cocaine when he confessed to the police. Further, Knese argues that counsel was ineffective for not presenting a substance abuse defense, in order to establish that he lacked capacity to deliberate—thereby negating the culpable mental state for first-degree murder.

■■■ The issue is whether counsel's performance conformed to the degree of skill, care, and diligence of a reasonably competent attorney, and whether defendant was prejudiced thereby. *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). "To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." *Id.* at 426. Reasonable trial strategy is not ineffective assistance of counsel because it did not work as hoped. *State v. Johnston*, 957 S.W.2d 734, 755 (Mo. banc 1997), *cert. denied*, 522 U.S. 1150, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998). Neither is it ineffective for counsel to pursue one reasonable trial strategy to the exclusion of another, even if the latter is also reasonable. *Clayton*, 63 S.W.3d at 207–08.

■■■ Knese argues that counsel should have presented evidence that his *Miranda* waiver was involuntary, unintelligent, and not knowing because he was high on cocaine at the time of his confession. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case and review is based on the totality of the circumstances, taking into account the background, experience, and conduct of the accused." *State v. Bucklew*, 973 S.W.2d

83, 90 (Mo. banc 1998), *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999). Defendant need not understand all possible consequences of the waiver, but only that he did not have to speak without the presence of an attorney, and that his statements could be used against him. *State v. Powell,* 798 S.W.2d 709, 713 (Mo. banc 1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991).

The record refutes Knese's allegation. Knese's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. There is no evidence of coercion. Over several hours, Knese made detailed, coherent statements to four police officers, after waiving his rights each time. He stated he understood his rights and wanted to speak to the officers. True, statements to the first officer were not introduced, as the officer described Knese's behavior as abnormal and wild. However, the remaining three officers testified that Knese was calm, rational, lucid and coherent at the time of his statements. In fact, Knese initiated conversation with a detective, later testifying that he was "just trying to talk to the police and tell them what happened."

By deposition, counsel testified that he put on a defense of self-defense. He believed that even if it did not result in an acquittal, it often persuades the jury not to find the maximum. Further, the wounds on Knese's body were physical evidence that supported self-defense. Counsel's strategy was to minimize mention of Knese's cocaine abuse. He did not want to present evidence that Knese's drug use was an excuse for his crime. He believed that an ordinary jury is not the least forgiving of substance abuse, and asking them to ignore Knese's statements would hurt more than it would help.

■ Voluntary substance abuse is inadmissible to negate the required mental state for first-degree murder. *Nicklasson,* 967 S.W.2d at 617. Substance abuse garners little to no sympathy from jurors. *State v. Kenley,* 952 S.W.2d 250, 262 (Mo. banc 1997), *cert. denied,* 522 U.S. 1095, 118 S.Ct. 892, 139 L.Ed.2d 878 (1998). Counsel's strategy—although unsuccessful—was reasonable.

### V. No Adverse Inference

■ Knese argues that during guilt phase, counsel was ineffective for not voir diring about—or requesting a jury instruction to draw no adverse inference from—Knese's decision not to testify.

By deposition, counsel offered the following explanation for not voir diring. First, they did not decide whether Knese would testify until after the State submitted its case-in-chief. Voir diring before then would only draw more attention to the issue. Second, he knew Knese's confessions were going to be admitted (over objection). Thus, the jury would hear his version of what happened.

With regard to the jury instruction, counsel knew that the State was prohibited from commenting on Knese's failure to testify. Counsel concluded that requesting an instruction was irrelevant and would only serve to emphasize. The motion court held that this was reasonable trial strategy.

■ Defendants have a right to the no-adverse-inference instruction, *upon request. Carter v. Kentucky,* 450 U.S. 288, 300, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). The instruction is not mandatory. Here, counsel decided to forego both voir dire on this matter, and a jury instruction. This strategy was reasonable given the extensive confessions admitted at trial. Reasonable trial strategy is not ineffective assistance of counsel. *State v. Whitfield,* 939

S.W.2d 361, 369 (Mo. banc 1997), *cert. denied,* 522 U.S. 831, 118 S.Ct. 97, 139 L.Ed.2d 52 (1997).

## VI.

Knese's remaining points need not be reviewed. The judgment as to the penalty phase is reversed. In all other respects, the judgment is affirmed. The case is remanded for the purpose of ordering a new penalty phase.

All concur.