**Travis C. KNIGHT, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 26095.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 2004.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson city, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Travis C. Knight, ("Movant") was charged with and convicted of statutory sodomy, a violation of Section 566.062.[1] This court affirmed his conviction on August 14, 2002, by memorandum decision. Before us now is Movant's appeal from the denial of a pro se motion for post-conviction relief filed pursuant to Rule 29.15.[2] In his single point on appeal, Movant argues he was denied effective assistance of counsel when his trial counsel failed to elicit additional testimony from an expert witness which would have raised doubt in the minds of the jurors. We disagree with Movant, find no error, and affirm the denial of his 29.15 motion.

In the afternoon of July 27, 2000, a five-year-old girl ("Victim") was visiting her great-grandparents who were babysitting her while her mother, Angie Montgomery was at work. Movant was also present at the house doing various odd-jobs for Victim's great-grandparents. Victim testified that while she was at her great-grandparents' house, Movant put his finger down her pants and touched her "private part." Her testimony on direct examination was as follows:

Q. [PROSECUTOR]: Now, did Travis do something to you?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: What did he do it with?

A. [VICTIM]: His finger.

Q. [PROSECUTOR]: All right. Now, do you know which finger, if anything?

A. [VICTIM]: I forgot that question.

Q. [PROSECUTOR]: All right. Don't worry about that. Do you know what a finger is?

A. [VICTIM]: These things right here that you grab stuff with.

Q. [PROSECUTOR]: Okay. Now, did Travis put his finger down your pants?

A. [VICTIM]: yes.

Q. [PROSECUTOR]: Now, what did he touch?

A. [VICTIM]: My private part.

Q. [PROSECUTOR]: Okay. Can you tell-you need to speak up loud and get your hand away from your mouth, okay? What is your private part?

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. All rule references are to Supreme Court Rules (2004), unless otherwise stated.

A. [VICTIM]: There, down below your pants.

Q. [PROSECUTOR]: Down below your pants.

A. [VICTIM]: (Moves head up and down.)

Q. [PROSECUTOR]: Okay. And could you point to your private parts?

A. [VICTIM]: (Indicates by pointing.)

Q. [PROSECUTOR]: Okay. You're pointing to right in between your legs, is that right?

A. [VICTIM]: Uh huh.

Q. [PROSECUTOR]: Okay. Now, do you go pee pee out of your private parts?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Did he touch your pee pee area?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Was this with his finger?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Did it hurt?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Do you know what he was doing with his finger?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: What?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Okay. Was his finger moving in any way?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Was it moving around your pee pee?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Did you like that?

A. [VICTIM]: No.

Q. [PROSECUTOR]: Did you tell him to stop?

A. [VICTIM]: Yes.

Q. [PROSECUTOR]: Did he stop?

A. [VICTIM]: No.

When she was home later that night, Victim told her mother about the incident which occurred involving Movant at her great-grandparents' house.

Movant testified in his own defense and denied the charge. He stated that while he was building a birdhouse, Victim sat down in the sawdust near the area he was working and started playing with scraps of wood. Victim started scratching at herself vigorously, at which point, Movant located a broom and had Victim move out of the way so he could sweep the sawdust away from where Victim was playing. He also brushed sawdust away from the crease in her stomach but asserted his physical contact with Victim ended there. A jury found Movant guilty of first degree statutory sodomy and he was sentenced to a prison term of thirty years.

 In order to prevail on a claim of ineffective assistance of counsel, Movant must meet a two-prong test. First, he must demonstrate that his counsel acted below the standard of a reasonably competent attorney. Specifically, counsel must have failed to conform to the degree of skill, care, and diligence that a reasonably competent attorney would conform to under similar circumstances. *Taylor v. State*, 126 S.W.3d 755, 758 (Mo. banc 2004). Second, Movant must prove prejudice by showing but for trial counsel's ineffective performance, the outcome of the proceeding would have been different. *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). If Movant fails to satisfy either prong, relief will be denied. *State v. Simmons*, 955 S.W.2d 752, 772 (Mo. banc 1997).

 There is a strong presumption that counsel was effective and we give great deference to Movant's counsel's trial decisions. This presumption also includes

the notion that counsel's conduct falls within a wide range of reasonable professional assistance. *Taylor* 126 S.W.3d at 759. Movant must overcome this presumption by a preponderance of the evidence in order to prevail. *Tokar* 918 S.W.2d at 761.

▇▇▇▇ Movant cannot base a claim of ineffective assistance on reasonable choices of trial strategy. *Knese v. State,* 85 S.W.3d 628, 631 (Mo. banc 2002). "Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." *Tokar* at 761, *citing Strickland v. Washington,* 466 U.S. 668, 690–691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984). In addition, Movant must demonstrate the challenged action did not constitute sound trial strategy from a decision made in exercising professional judgment. *Jameson v. State,* 125 S.W.3d 885, 890 (Mo.App. E.D.2004). In reviewing trial strategy, we evaluate the conduct of counsel from his perspective at the time of trial. *State v. Light,* 835 S.W.2d 933, 940 (Mo.App. E.D.1992).

▇▇▇▇▇ Post-conviction reviews, by this court, are determined by whether the findings and conclusions of the trial court were clearly erroneous. *Knese* 85 S.W.3d at 631. If, after a review of the entire record, we are left with a clear, definite impression that a mistake has been made, then the findings and conclusions of the motion court will be deemed clearly erroneous. *Id.*

A person commits statutory sodomy if he has "deviate sexual intercourse" with another who is less than fourteen years old. Section 566.062. Deviate sexual intercourse is defined in pertinent part as: "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger[.]" Section 566.010(1).

After the incident was reported to police, Dr. Dorothy Munch was asked by the Department of Family Services to conduct a Sexual Assault Forensic Exam (SAFE) on Victim. At the request of the State at trial, Dr. Munch testified that she took a medical history on Victim and she indicated her examination revealed physical findings consistent with sexual abuse. She specifically testified that her physical findings included "superficial abrasions on what's termed the mans pubis." Dr. Munch stated she found superficial abrasions on the labia majora; she also found hyperemia, also known as redness. In a brief cross-examination, Movant's counsel asked if the abrasions could have been self-inflicted; he then propounded a hypothetical of a child playing in sawdust and scratching herself as a possible reason for the physical findings.

In this appeal, Movant contends the motion court erred in denying him relief for ineffective assistance of counsel when his counsel failed to elicit additional testimony from Dr. Munch that the hymen was intact, without transection or notching, and the recorded history included perineal, not vaginal, contact. He argues this additional testimony would have raised doubts in the minds of the jurors of any actual penetration of Victim's vagina which is required for a conviction of statutory sodomy.

Dr. Munch's deposition was taken for the purposes of Movant's 29.15 hearing. She was asked additional questions concerning her SAFE examination. Dr. Munch recited the "compilation" of information given by Victim and the "historian." [3] In a section on the report labeled

---

3. The first person Dr. Munch interviewed was Victim's mother and would have been the

"vaginal contact", Dr. Munch crossed out "vaginal" and substituted "perineal." She explained that, due to the history given to her, she felt perineal described more accurately the contact to Victim. She explained that the perineal area is the genital area between the pubis synthesis and the anus and it accompanies everything that lies therein whereas the vaginal area is the female tissue that is basically a potential space that leads from the exterior to the surface of the uterus; in other words, "perineal" is a broader term than "vaginal." Dr. Munch further explained that there could be perineal contact without contact within the vagina.

While it is true that Dr. Munch testified in her deposition that the hymen was intact, free of notching, and not transected, she added that a lack of hymenal damage does not rule out vaginal penetration. As an example, she explained in her deposition that she could place a small catheter in Victim's vagina without harming the hymen. This could be two inches inside without transection; therefore, she concluded that the issue of hymenal damage and penetration is relative. She further stated that the perihymenal tissue was red. Dr. Munch concluded, based on her examination and history that the contact was on Victim's perineum. Movant contends that, had the jury been given this entire history and medical explanation, the jury would have had a reasonable doubt that there was penetration of the Victim's vagina. We disagree.

Movant's defense was that he did not touch Victim other than the crease in her stomach while brushing off sawdust, and the redness and abrasions found on Victim were a result of Victim's own scratching when sawdust had worked its way into her shorts while she was playing. At trial, Dr. Munch had been asked on cross-examina-

tion at trial whether the abrasions the doctor saw could have been self-inflicted. She responded that "the area at which [Victim] had abrasions is typically protected by two layers of clothing. It is not an area that one typically finds abrasions by accident." When Movant's counsel pressed with the hypothetical concerning sawdust working its way into Victim's shorts, even underneath the panties of a child, whether it would be typical that the abrasions be self-inflicted by scratching, Dr. Munch continued that the sawdust would probably land in the pressure points, typically panty lines. Dr. Munch replied that the abrasions were not in the panty lines but on the anterior mans pubis. Only after Movant's counsel asked "[i]f somehow the sawdust got in the area between the vagina lips and the child scratched, could those marks be from the scratching," would Dr. Munch concede that self-inflicted scratching could cause marks similar to the ones seen on Victim.

Based upon Dr. Munch's answers to counsel's questions at trial, we find it to be a reasonable trial strategy to limit further cross-examination of her. The direct examination of Dr. Munch was very brief; it was during cross-examination that further damaging testimony to Movant was elicited. It is clear that Dr. Munch's deposition testimony was even more damaging to Movant in that she explained that an intact hymen did not rule out penetration at all. Her more detailed explanation of the perineal reference in her charts provides no assistance to Movant. It is clear that Dr. Munch considered perineal to be a broader, more inclusive term, not as differentiating between the vagina and perineum. The jury chose to believe a five-year-old child regarding the events that transpired between Victim and Movant. A highly

historian as listed on Dr. Munch's report.

technical discussion by the doctor concerning contact in the perineal area as opposed to the amount of force necessary to notch or transect or damage the hymen would not have assisted Movant. Further medical testimony could not counter the verdict that Movant committed statutory sodomy involving his hand and penetration, however slight, of Victim's vagina.

We affirm the denial of Movant's 29.15 motion.

GARRISON, P.J., and PREWITT, J., concur.