Richard D. LAWRENCE, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 25990.

Missouri Court of Appeals, Southern District, Division One.

April 26, 2005.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Richard D. Lawrence ("Movant") was found guilty by a jury of driving while intoxicated, a violation of Section 577.010, and driving while his license was revoked, a violation of Section 302.321.[1] The court sentenced Movant as a prior and persistent offender to concurrent terms of ten years in the custody of the Missouri Department of Corrections and one year in the custody of the Laclede County jail, respectively. We affirmed his conviction and sentence on direct appeal. *State v. Lawrence*, 64 S.W.3d 346, 355 (Mo.App. S.D.2002).

On February 7, 2002, Movant filed a *pro se* motion to vacate, set aside or correct his conviction and sentence, pursuant to Rule 29.15.[2] An amended version of that motion was filed on October 25, 2002. Following an evidentiary hearing, the motion court denied Movant's motion. This appeal followed. We affirm the motion court's ruling.

On September 25, 1998, Deputy Greg Weddle ("Deputy Weddle") of the Laclede County Sheriff's Department was directing traffic at the intersection of Highway 5 and Route C because of a nearby fire, when he observed a black Pontiac Firebird traveling north on Highway 5 at a high rate of speed. The car swerved out of its lane several times and nearly hit Deputy Weddle and his patrol car as it drove past. Since the car had crossed the center line, Deputy Weddle believed the driver might

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

2. References to rules are to Missouri Rules of Criminal Procedure (2004).

be intoxicated so he called dispatch to have the highway patrol look for the vehicle. Deputy Weddle's call to dispatch included a description of the driver as a white male with long, shoulder-length hair wearing a black T-shirt and sunglasses, as well as the fact that the car had a cracked and shattered front windshield that was still intact.

Shortly after the incident involving Deputy Weddle, David Hudson ("Hudson") was traveling south on Highway 5, about a mile and a half north of the intersection where Deputy Weddle was directing traffic, when he noticed a late model black car, either a "Trans Am, Z 28[or] Firebird," cross the center line coming towards him. The black car forced another car off of the road and also forced Hudson to pull into a driveway to avoid a collision. Hudson observed that the driver had long hair and was not wearing a shirt. He also noted the vehicle had a "busted out" or shattered windshield on the driver's side. When the black car pulled into a nearby driveway, Hudson looked through the scope of an unloaded rifle and observed the driver, whom he later identified as Movant, get out of his car and walk north into a wooded area. Hudson then continued south on Highway 5 until he reached the intersection where Deputy Weddle was positioned. He told Deputy Weddle what had happened and continued on to his farm.

Several minutes later, when Hudson drove back north on Highway 5, he observed Movant, about two miles north of the intersection of Highway 5 and Route C, standing at the corner of Highway 5 and Route HH. Hudson turned around and went back to Deputy Weddle's location at Highway 5 and Route C, where he was told that Movant had been apprehended and was being brought to that location by a highway patrolman.

Trooper Jason Riggs ("Trooper Riggs") of the Missouri Highway Patrol overheard radio traffic concerning the incident with Deputy Weddle. After receiving a description of the driver, Trooper Riggs located Movant standing at the corner of Highway 5 and Route HH, in the area where Hudson last observed him. Trooper Riggs stopped and as Movant was walking to the patrol car, Trooper Riggs noticed that he was unsteady on his feet and staggering, his eyes were blood shot and watery, and his speech was slurred as he talked. Movant was also carrying a set of keys which he handed to Trooper Riggs upon being requested to do so. Movant agreed to perform some field sobriety tests. According to Trooper Riggs, Movant failed a horizontal gaze nystagmus test. Movant then refused to undergo any other sobriety tests, and when asked if he'd been drinking, Movant replied, "a lot." Movant was placed under arrest for driving while intoxicated and given his *Miranda* warnings.[3]

Trooper Riggs was informed that a witness was with Deputy Weddle. When he took Movant to that location, Hudson identified Movant as the driver of the black car. While Trooper Riggs was talking with Deputy Weddle and Hudson, they noticed that Movant had fallen out of the patrol car. When asked what he was doing, Movant said, "I am drunk" and asked Trooper Riggs to help him off the ground.

The following day, Trooper Riggs went to the location where the black car Hudson saw Movant get out of had been towed. He found that the keys Movant handed to him started that car.

At trial, Movant's driving record was introduced, showing that his driving privileges were under revocation at the time of the incident in question and, as indicated

---

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86    S.Ct. 1602, 16 L.Ed.2d 694 (1966).

earlier, he was found guilty of felony driving while intoxicated and driving while his license was revoked.

Movant now appeals the motion court's denial, following an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief. Movant raises two points on appeal. First, he contends the motion court clearly erred in denying his Rule 29.15 motion because Movant's trial counsel was ineffective for failing to request a change of venue in that he was prejudiced because his niece by marriage, who knew of his prior alcohol-related convictions, became a juror in his case. Second, he contends his trial counsel was ineffective for not allowing Movant to testify in that he wanted to tell the jury that he did not have the car keys in his hand, despite contrary evidence, which went to the element of whether Movant was actually driving the car.

■ Our review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Knese v. State*, 85 S.W.3d 628, 631 (Mo. banc 2002); *Bewley v. State*, 151 S.W.3d 151, 153 (Mo.App. S.D.2004). The findings and conclusions of the motion court are clearly erroneous only if, after a thorough review of the record, we are left with the definite and firm impression that a mistake has been made. *Shockley v. State*, 147 S.W.3d 189, 191 (Mo.App. S.D. 2004).

■ Trial counsel's performance is presumed to be effective and therefore, Movant bears the burden in overcoming this presumption by a preponderance of the evidence. Rule 29.15(i); *Nicklasson v. State*, 105 S.W.3d 482, 484 (Mo. banc 2003); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). In order for Movant to prevail on his ineffective assistance of counsel claim, he must first demonstrate that his trial counsel failed to exercise the custom-

ary skill and diligence of a reasonably competent attorney under similar circumstances. *Crooks v. State*, 131 S.W.3d 407, 409 (Mo.App. S.D.2004). Second, he must demonstrate that not only was his trial counsel ineffective, but that he was prejudiced by trial counsel's poor performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). "Prejudice is shown where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Crooks*, 131 S.W.3d at 409 (citing *Strickland* at 694, 104 S.Ct. 2052). If Movant fails to satisfy either prong, relief will be denied. *State v. Simmons*, 955 S.W.2d 752, 772 (Mo. banc 1997); *Wright v. State*, 125 S.W.3d 861, 866 (Mo.App. S.D.2003).

■ Movant cannot base a claim of ineffective assistance on reasonable choices of trial strategy. *Knese*, 85 S.W.3d at 631. Therefore, in attempting to satisfy the first prong of the test, Movant must overcome the presumption that the challenged action was a decision appropriately made in the exercise of professional judgment. *Jameson v. State*, 125 S.W.3d 885, 890 (Mo.App. E.D.2004). "Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." *Tokar*, 918 S.W.2d at 761, (citing *Strickland*, 466 U.S. at 690–691, 104 S.Ct. 2052). In reviewing trial strategy, we evaluate the conduct of counsel from his perspective at the time of the conduct. *State v. Light*, 835 S.W.2d 933, 940 (Mo.App. E.D.1992).

■ Movant maintains his trial counsel was ineffective by not requesting a change of venue, even though Movant requested that he do so. He contends that he was prejudiced by this failure because his

niece, by marriage, became a juror and that she knew of his prior alcohol related convictions. He also explained, at the evidentiary hearing, that he wanted his counsel to request a change of venue because Movant was "well[-]known around [the county] because of the alcohol," but that his trial counsel refused unless Movant paid more money.

During voir dire, the State asked prospective jurors if anyone knew Movant. None of the jurors, including a juror later identified by Movant as his niece by marriage, responded affirmatively to the State's question. The same was true when they were asked if anyone knew anything about this case. However, on the second day of trial, Movant advised his trial counsel that he recognized one of the jurors as being his niece by marriage. Counsel then informed the trial court that one of the jurors might be related to Movant. Mandy Gormley ("Mrs.Gormley") was summoned to the bench, out of the presence of the other jurors, to discuss the possibility that she may be related to Movant. The following colloquy occurred between the court and Mrs. Gormley:

Q: .... Do you know or know of Mr. Lawrence?

A: No.

Q: You don't know that you have ever seen or known of him?

A: No. I will say that after you read that address today, that he is in Richland, now my husband's mom at one time, I don't know her, we never talked to her, that her, I don't know her maiden name. One time her last name was Lawrence and kind of hit me then that there may have been, but I have know [sic] clue as to if there's any relationship there. But it just kind of hit me, but I don't know any of his family from his mom's side or his mom. Other than that, no.

Q: Talking about your husband?

A: Yes.

Q: What's his name?

A: Johnny Gormley.

Q: So you don't know any of his relatives or any of his mom's?

A: Not on the mom's side, no.

Q: And you said that you recalled that her name was once Lawrence?

A: At one time, he didn't know that much about his mom either and he thought at one time that could have been her last name. He didn't grow up around her at all.

Movant's claim of prejudice is refuted by the record. Not only did Mrs. Gormley not recognize him, but she was unfamiliar with her husband's mother's side of the family. Movant fails to demonstrate how he was prejudiced by this juror.

Movant's counsel testified at the evidentiary hearing that he discussed the possibility of a change of venue with Movant. They evaluated whether Movant would be able to obtain a fair trial in Laclede County or if too many people knew him. Movant was also advised of the inconvenience of having the trial in another county. His counsel stated that he did not believe that a change of venue was necessary because the circumstances of the case were not publicly known and he believed that Movant would obtain a fair trial. According to his counsel, Movant deferred to his opinion about a change of venue.

The motion court concluded that Movant failed to establish prejudice regarding the venue issue. It has not been shown to be clearly erroneous in that regard. Point I is denied.

In Movant's second point, he contends his trial counsel was ineffective for refusing to let Movant testify, as he would have stated that the car keys were not in his hand and this would have gone

to the element of whether Movant was driving the car. Absent any exceptional circumstances, the advice by counsel on whether or not to testify is a matter of trial strategy and not grounds for post-conviction relief. *Lott v. State*, 147 S.W.3d 842, 845 (Mo.App. S.D.2004); *Morrison v. State*, 75 S.W.3d 893, 897 (Mo.App. S.D. 2002).

During the evidentiary hearing, Movant explained that he wanted to testify, but his trial counsel threatened to withdraw if Movant insisted on doing so. His trial counsel, however, testified that he did not want Movant's eleven prior DWI convictions to become known to the jury because he believed such knowledge would be damaging to his defense. "[Movant]'s spent a good portion of his life in jail or prison, and I was very concerned that the jury would prejudge him or judge him for that case based upon his priors, which is a fairly typical concern for anyone who has prior convictions, but [Movant] had quite a few." Movant's trial counsel also testified that he discussed with Movant, on several occasions, his right to testify and why counsel believed he should not take the stand. According to counsel, Movant agreed with that advice. Later during the trial, counsel confirmed with Movant that he did not intend to testify.

Movant also failed to prove that had he testified, a different outcome would have resulted. If Movant had testified, the jury could have learned of his prior eleven DWI convictions. Even if Movant had testified that he was not holding the car keys, there was an overwhelming amount of evidence implicating Movant. Hudson identified Movant as the driver of the black vehicle that nearly ran him and another driver off of the highway after crossing the center line. The vehicle and driver matched the description given by Deputy Weddle, which Trooper Riggs used to identify and apprehend Movant. Mov-

ant, therefore, has not demonstrated prejudice from counsel's alleged ineffectiveness.

The motion court found "that given [M]ovant's record of convictions, it was reasonable trial strategy not having [M]ovant testify at trial. Movant has failed to meet the burden of proof as to this point." We cannot conclude that these findings were clearly erroneous. Point II is denied.

The judgment of the motion court is affirmed.

PREWITT and RAHMEYER, JJ., concur.