Damathan L. STEVENS, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. SD 31059.

Missouri Court of Appeals, Southern District, Division One.

Nov. 23, 2011.

Andrew E. Zleit, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, and, Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Damathan L. Stevens ("Movant") appeals the motion court's denial of his Rule 29.15[1] motion to vacate his conviction and resulting 20 year sentence for distribution of crack cocaine. *See* sections 195.211 and 195.291.2.[2] We affirmed Movant's conviction on direct appeal in *State v. Stevens*, 304 S.W.3d 139, 140 (Mo.App. S.D.2009).

In a single point relied on, Movant claims his trial counsel was ineffective for: 1) failing to pursue a motion to suppress a police officer's identification of Movant because that identification—made from a single photograph—was unduly suggestive; and 2) the officer did not have an adequate opportunity to observe Movant at the time of the sale. Movant claims there is a reasonable probability that such a motion would have been granted and that Movant would have been acquitted in the absence of the suppressed identification. Movant's point also contends the motion court clearly erred in finding that trial counsel's decision not to file the motion was trial strategy.

Because counsel pursued a reasonable trial strategy in using the officer's questionable identification to discredit the State's case instead of attempting to have it excluded, and because the motion court correctly found that there was no reasonable probability Movant would have been acquitted if the officer's identification had been suppressed, we affirm.

## Standard of Review

We review the motion court's denial of post-conviction relief to determine whether its findings of fact and conclusions of law are clearly erroneous. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). Those findings and conclusions are presumed correct and will be deemed clearly erroneous only if our review of the entire record leaves us "with the definite and firm impression that a mistake has been made." *Id.*

## Background

### *The Underlying Trial*

In August 2008, a jury found Movant guilty of distribution of crack cocaine, a controlled substance. The relevant evidence at trial, viewed in the light most favorable to the verdict, *Rousan v. State*, 48 S.W.3d 576, 579 (Mo. banc 2001), established that on May 19, 2007, law enforcement officers arranged with a confidential informant ("CI") to conduct a controlled buy of crack cocaine at a park in Sikeston. With the supervision of Detective Bobby Sullivan, CI called a telephone number she possessed and arranged to buy crack cocaine from someone she referred to as "Dee."

Missouri State Highway Patrol Sergeant Jeffrey Heath, who was equipped with a video camera on his person, rode with CI to the park while Sullivan and Sergeant Andrew Cooper followed in another vehicle. Sullivan was parked approximately 103 feet away from the spot where the transaction took place and used a "Nikon Spidascope" to observe it. Sullivan did not know who CI was referring to as "Dee" until that person arrived at the park. At that point, Sullivan immediately recognized Movant and his female companion. Sullivan then witnessed CI and Movant walk

---

1. All rule references are to Missouri Court Rules (2011).

2. All statutory references are to RSMo 2000. Movant was sentenced as a persistent drug offender.

together to a picnic table. CI put money on the table, and Movant put "something" on the table. Movant then picked up the money and walked away.

At trial, Sullivan identified Movant as the person involved in the controlled buy with CI. Sullivan was familiar with Movant because he had seen him on a "[m]inimum of 15" prior occasions and had seen Movant and his companion "in the vehicle numerous times."

Heath also identified Movant at trial and testified that he saw Movant arrive at the park as a passenger in a female's car. As Heath and CI walked toward Movant's vehicle, Movant instructed Heath to wait there and indicated that CI "could meet him at the picnic table[.]" Heath gave the money to CI and then watched as the exchange occurred at the picnic table. Heath testified that he "got a good look at [Movant] the whole time he was there, from the time he got out of the Thunderbird until he drove passed [sic] me." The video recording device worn by Heath did not capture a clear view of Movant's face.

Sullivan showed Heath a single driver's license photograph via email "within an hour or so" of the transaction. Heath did not remember what the email stated and did not remember its title or tag line. Heath testified that what he had received from Sullivan via email "was a picture of [Movant]." Heath was not familiar with Movant when the controlled buy took place.

CI identified Movant as the person from whom she had purchased the crack cocaine. CI admitted being "an addict" and to using drugs at the time she worked as a confidential informant. CI testified that there was a "[z]ero percent possibility" that she was mistaken about Movant being the person who sold her the crack cocaine on May 19, 2007. CI stated that she had

met Movant two times before that particular buy occurred.

Cooper testified that he was also familiar with Movant before May 19, 2007, but he did not immediately recognize Movant when Movant appeared at the park. When Sullivan viewed the persons at the picnic table through the Spidascope and stated that the male was Movant, Cooper took the device and confirmed that it was indeed Movant. Cooper testified that even if Sullivan had not identified Movant as the person he was seeing, Cooper would still "have known [Movant] on sight."

### The Motion Hearing

Prior to trial, Movant was represented by Jacob Zimmerman. Zimmerman testified that he withdrew from Movant's case shortly before trial for several reasons. One of those reasons was that Movant disagreed with Zimmerman's inclination to seek a continuance of Movant's trial setting. One of Zimmerman's reasons for wanting a continuance was his desire to explore the distances between the persons participating in the buy and those observing it. Zimmerman was interested in "a potential pretrial [m]otion to [s]uppress, ID at least of Heath, and obviously if that were to be overruled, it could be used potentially for the trial to impeach Heath's testimony."

Zimmerman believed there "[were] significant issues and concerns with [Heath's] identification of [Movant]." He believed that Sullivan's sending a single photograph to Heath was "extremely suggestive" and that "there were objective grounds to challenge the identification of Heath[.]" Zimmerman testified that if he had represented Movant at trial, his strategy would have been to challenge the identification of Movant, and he regarded Heath as "someone to attack" in support of that strategy. Zimmerman testified that "[o]bviously that

was difficult because there were three different, or four different IDs. Our idea was to contest the identification and one of the lynch pins we felt was Heath's part in this."

But Zimmerman also conceded that suppression of Heath's identification could have actually hurt Movant's trial strategy.

Q. And, if you had filed a[m]otion to [s]uppress in this case to try to get the identification of [Heath] tossed out so it couldn't be discussed in front of the jury, do you think that would have actually hurt your trial strategy as far as attacking the identification of [Movant] in the case?

A. Well, I think it may have taken away, I hate to use the word a red herring maybe. Certainly someone to attack.

Q. You would have been left with the C.I. that had a face-to-face conversation with him and the two officers, who were a short distance away with binoculars?

A. Yes. I still think Sullivan and Cooper had the potential to. Understand I was not at the trial.

Q. Sure.

A. I didn't feel it was proper for me to show up at the trial since I withdrew. I don't know if their ID was attacked or not. I assume it was. I think still I think [sic] obviously there are still some cross examining [sic] to be done of Sullivan. Clearly Sullivan in my mind was the most problematic for the defense to overcome of Sullivan's [sic] identification. I felt like that was the worse fact for the defense was Sullivan's ID.

Q. Basically another way to ask the same question, and maybe a little more direct, is do you feel as far as trial strategy is concerned that [Heath] getting up on the stand thinking that in your testimony he was lying about what he saw, things of that nature, if all that had been eliminated through a[m]otion to [s]uppress, do you think that would have aided [Movant] in trial as far as throwing some doubt in the jury's mind?

A. It certainly could have made it more difficult for the defense. Obviously, I don't know what the jurors talked about. Yeah, it certainly is one of the best things that the defense had in this case in my opinion was the fact that Heath's ID was so problematic. That was one of the best things to use for the defense in attacking.

Theodore Liszewski took over from Zimmerman and began representing Movant about two weeks before trial.[3] Liszewski testified that his trial strategy was to point out all of the mistakes the police made during their investigation. Liszewski was critical of Heath's opportunity to adequately observe the controlled buy, stating that "Heath was full of bull." Liszewski explained as follows his intention to use Heath's suspect identification in support of his defense strategy.

A. I thought it fed into our case theory. I had thought, hey, you know, this is kind of a gold mine. A police officer sends another police officer a single photo. Whenever these cops have been to the academy, trained to do six-pack line-ups, I thought that was something that was beneficial to [Movant].

---

**3.** Both attorneys worked in the Public Defender's Office.

Q. And do you think that on one hand could have been grounds for filing a[m]otion to [s]uppress?

A. I think that I could have filed one, but as I indicated to you off the record, I don't think it would have went anywhere. My understanding of the present state of law in Missouri is that in order to suppress a line-up, or line-up of any matter, it has to be so suggestive it would violate a Defendant's rights to due process.

Liszewski responded as follows when asked whether he chose not to file a motion to suppress because it lacked merit or because he wanted to use Heath's identification of Movant as a part of his trial strategy.

I thought it [Heath's identification of Movant] helped us. From a strategic standpoint it helped us to have what Heath was saying. As far as legally speaking would it be meritorious or would it be a prevailing motion on my part, no. I think it was something that wouldn't have went anywhere. It would have—I could have had the hearing. It would have taken the Judge thirty seconds to overrule the motion.

Although Liszewski conceded that he did not have "much to lose" in filing a suppression motion, he further explained his strategy as follows:

A. Honestly speaking, this was a trial you just tried to throw as much dirt in the water as you can, make the water as muddy as possible. Having Heath's story muddy the water, along with the C.I. problems, and along with some of the things Sullivan didn't do, it gave the jury things to hang their hat on if they decided they were going to find him not guilty.

Looking back, if the identification of Heath would have been out, basically what you're left with is an officer that says I know [Movant] because I have arrested him in the past. I don't remember how Mr. Cooper or Sergeant Cooper identified him. The C.I. that says I know him as Dee, and that is the guy, from my vantage point it would have actually weakened the case, not that it was a strong case anyway.

■■■ Although Movant's brief indicates that Movant "testified through deposition[,]" no such deposition was deposited with this court or included in the legal file. As a result, we cannot consider it. *See Ludwig v. State*, 771 S.W.2d 373, 374 (Mo. App. S.D.1989) ("Appellate courts do not consider matters outside the record"). Further, the "failure to file the transcript as an exhibit on appeal results in a presumption that its contents were favorable to the judgment entered, and not favorable to movant." *Id.*

*The Motion Court's Findings & Decision*

The motion court denied Movant's Rule 29.15 motion and issued findings of fact and conclusions of law which included, among other things, the following:

Both of Movant's attorneys testified at the evidentiary hearing that their respective trial strategy was to discredit [Heath's] identification of [Movant], who was working as an undercover officer in this case. It should be noted that [Heath] was one of four individuals who testified at trial and identified [Movant] as the person who distributed controlled substances on May 19, 2007.

. . . .

Movant claims that had trial counsel filed a motion to suppress the identification of Movant by [Heath], it would have been meritorious. [Movant] claims that

a single photo provided to [Heath] from [Sullivan] was so suggestive that that [sic] it was conducive to irreparable mistaken identification. This [c]ourt disagrees with that belief but feels it is irrelevant because failing to file a motion to suppress was reasonable trial strategy by both Zimmerman and Liszewski. The motion court further found that there was "no reasonable probability that the outcome of the trial would have been different if a[m]otion to [s]uppress had been granted." We find no error, clear or otherwise, in these findings.

## Analysis

■ "To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby." *Evans v. State,* 239 S.W.3d 191, 194 (Mo.App. S.D.2007); *see also Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Allegations in a post-conviction motion are not self-proving." *Nunley v. State,* 56 S.W.3d 468, 470 (Mo.App. S.D.2001). Unless a movant shows both deficient performance and resulting prejudice, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ "Defense counsel has wide discretion in determining what strategy to use in defending his or her client." *Worthington v. State,* 166 S.W.3d 566, 578 (Mo. banc 2005). Generally, "the decision to file a motion to suppress is a matter of trial strategy and allegations of ineffective assistance of counsel relating to matters of trial strategy do not provide a basis for post-conviction relief." *Maberry v. State,* 137 S.W.3d 543, 547–48 (Mo.App. S.D. 2004). We do not employ hindsight in reviewing matters of trial strategy; we "evaluate the conduct of counsel from his perspective at the time of trial." *Knight v. State,* 147 S.W.3d 854, 858 (Mo.App. S.D. 2004). Counsel may not be considered ineffective for failing to investigate and file meritless motions to suppress. *State v. Hunter,* 840 S.W.2d 850, 870 (Mo. banc 1992).

■ Prejudice is demonstrated by showing a reasonable probability that the outcome of the trial would have been different but for counsel's deficient performance. *Winfield v. State,* 93 S.W.3d 732, 736–37 (Mo. banc 2002).

> In order to show prejudice, as defined in *Strickland,* from failure to file a motion to suppress, defendant would have to establish that such a motion would have at least a possibility of success and that the exclusion of his statements from evidence would have a reasonable probability of altering the outcome of the trial.

*Mathenia v. State,* 752 S.W.2d 873, 875 (Mo.App. E.D.1988).

■ Here, Liszewski testified that his trial strategy was to point out all of the mistakes made by law enforcement and "[f]rom a strategic standpoint it helped us to have what Heath was saying." He testified that while there was generally little to lose in filing a motion to suppress, he believed that this particular motion would have lacked merit and that keeping the evidence in the trial with other evidentiary "problems" "gave the jury things to hang their hat on if they decided they were going to find him not guilty." Liszewski reasoned that taking Heath's identification out "actually weakened the case" from the defense "vantage point" because it still left in the other, stronger identifications.

Foregoing a doubtful motion to suppress in favor of eliciting negative evidence against the State is a reasonable trial strategy. *Cf. Stubenrouch v. State,* 752 S.W.2d 327, 328 (Mo.App. E.D.1988) (holding ineffective assistance of counsel not shown where a motion to suppress was sustained during trial but then withdrawn by defense counsel in order to make the most of the line-up evidence that the jury had already heard).

Movant argues Liszewski's testimony "was couched in terms of hindsight, not of strategy going into trial" and points to Liszewski's statement about "[l]ooking back" as a subsequent acknowledgement by Liszewski that keeping Heath's testimony in was not "all that bad" after all. The motion court was free to believe that Liszewski's "[l]ooking back" statement was simply his means of expressing how much more difficult the trial would have been "if the identification of Heath would have been out[.]"

█ Both Zimmerman and Liszewski testified that his trial strategy was to challenge the police's identification of Movant as the drug seller and that attacking Heath's particular identification was a part of that strategy. The trial court did not err in crediting their testimony. *See White v. State,* 122 S.W.3d 118, 119 (Mo. App. S.D.2003) ("Credibility of the witness is a determination to be made by the motion court"). And while Zimmerman testified that he thought there were "significant issues" with what he regarded as an "extremely suggestive" identification and "objective grounds" "for a potential pretrial [m]otion to [s]uppress," it is permissible for defense counsel to elect between two reasonable trial strategies; the motion court should not second-guess one reasonable choice over other available reasonable choices. *See Borst v. State,* 337 S.W.3d 95, 106 (Mo.App. W.D.2011) (holding the mo-

tion court erred in faulting trial counsel's reasonable strategy of limiting cross-examination regarding an allegation of prior abuse instead of attempting to prove it false). Moreover, even Zimmerman, who more strongly considered pursuing such a motion to suppress, acknowledged that if it had been granted it would have removed "someone to attack" and "[i]t certainly could have made it more difficult for the defense."

Assuming, *arguendo,* that a motion to suppress Heath's identification of Movant would have been successful, Movant did not prove there was a reasonable probability that the verdict would have been different if Heath's identification of Movant had been suppressed. As Liszewski pointed out, several other witnesses identified Movant as the seller. And each of these witnesses, unlike Heath, was already familiar with Movant. The motion court did not err, clearly or otherwise, in concluding that Movant received no ineffective assistance of counsel and suffered no prejudice as a result of trial counsel's failure to seek to suppress Heath's identification of Movant.

Movant's point is denied, and the motion court's denial of post-conviction relief is affirmed.

RAHMEYER and LYNCH, JJ., concur.