Richard STRONG, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 88311.

Supreme Court of Missouri,
En Banc.

July 31, 2008.

Rehearing Denied Sept. 30, 2008.

Melinda K. Pendergraph, Office of Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Mr. Richard Strong appeals the denial of his Rule 29.15 motion for post-conviction relief from his convictions for two counts of first degree murder and sentences of death. Because this case involves the

death penalty, this Court has jurisdiction. Mo. Const. art. V, sec. 10; order of June 16, 1988. On appeal, Mr. Strong claims that the motion court erred in denying his request to interview jurors and his six claims of ineffective assistance of trial counsel. He also asserts that Missouri's method of lethal injection is unconstitutional because it is cruel and unusual punishment. This Court affirms the motion court's denial of post-conviction relief.

## I. Factual and Procedural Background[1]

On October 23, 2000, police officers were dispatched to the home of Eva Washington, following a 911 call. Ms. Washington lived in the home with her two-year-old daughter, Zandrea Thomas, and Ms. Washington and Mr. Strong's three-month-old daughter. When the police arrived, no one initially answered the front or back doors. The officers continued to knock and shout, and Mr. Strong eventually came to the back door. When he answered, he was informed of the 911 call and asked if his "wife" and kids were all right. In response, Mr. Strong told the police that Eva Washington and the two children were inside sleeping. Mr. Strong then stepped out and closed the door behind him. The police again asked about Ms. Washington, and Mr. Strong stated that she was at work. Because this conflicted with his prior statement, the police inquired again about the children. Mr. Strong told the officers the children were inside. When the officers asked if they could check on the children, Mr. Strong told them he had locked himself out. Mr. Strong knocked on the door and called for someone to open it.

The officers noted that Mr. Strong was sweating profusely, had dark stains on the knees of his jeans, and had blood on his left hand. They ordered Mr. Strong to step aside and kicked in the door. Mr. Strong ran. When the officers chased him, Mr. Strong told them, "Just shoot me; just shoot me." After he was caught and handcuffed, he told the officers, "I killed them."

Inside the apartment, police found the dead bodies of Ms. Washington and Zandrea in a back bedroom. Both had been repeatedly stabbed with a knife. On the bed, one of the officers found a large butcher knife. An autopsy revealed that Ms. Washington had been stabbed twenty-one times and had five slash wounds, and the tip of the knife with which she had been stabbed was embedded in her skull. The autopsy of Zandrea showed she had been stabbed nine times and had twelve slash wounds. The nature of the wounds to Ms. Washington and Zandrea were quite similar and appeared to be deliberate, calculated and intended to kill. Both victims had wounds that could be characterized as a "gutting," in that their intestines protruded from the wounds. The one difference in the nature of the wounds is that Zandrea had a neck wound, which indicates an attempt to saw off her head. There were no defensive wounds on either body. The three-month-old baby was on the bed next to a pool of blood, but was unharmed.

Mr. Strong was charged with two counts of first degree murder for the deaths of Ms. Washington and Zandrea. A jury convicted him of both murders, and the court adopted the jury's recommendation and sentenced him to death. He appealed, and this Court affirmed the convictions and sentences. *State v. Strong*, 142 S.W.3d 702 (Mo. banc 2004). Following his direct

---

1. Portions of the facts are quoted from the opinion in Mr. Strong's direct appeal, *State v. Strong*, 142 S.W.3d 702 (Mo. banc 2004), without attribution.

appeal, Mr. Strong filed a motion for post-conviction relief under Rule 29.15. After an evidentiary hearing, the motion court denied all his claims, finding that the record evidences a "very zealous and well-prepared attorney" and that Mr. Strong failed to demonstrate any ineffective assistance or prejudice. This Court affirms the motion court's judgment.

## II. Standard of Review

In reviewing the overruling of a motion for post-conviction relief, the motion court's ruling is presumed correct. *Worthington v. State,* 166 S.W.3d 566, 572 (Mo. banc 2005). A motion court's judgment will only be overturned when either its findings of fact or its conclusions of law are clearly erroneous. Rule 29.15; *Worthington,* 166 S.W.3d at 572. To overturn, the ruling must leave the appellate court with a "definite impression that a mistake has been made." *Id.*

To be entitled to post-conviction relief for ineffective assistance of counsel, the defendant must satisfy the two-prong *Strickland* test: first, the defendant must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation and, second, that trial counsel's failure prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both of these prongs must be shown by a preponderance of the evidence in order to prove ineffective assistance of counsel. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006).

Mr. Strong must overcome a strong presumption that counsel's conduct was reasonable and effective to meet the first prong of the *Strickland* test. *Id.* To overcome this presumption, Mr. Strong must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.*

Trial strategy decisions may only serve as a basis for ineffective counsel if they are unreasonable. *See id.* The choice of one reasonable trial strategy over another is not ineffective assistance. *Worthington,* 166 S.W.3d at 573. "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." *Anderson,* 196 S.W.3d at 33 (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

To satisfy the prejudice prong of the *Strickland* test, Mr. Strong must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would be different. *Id.* at 33–34, 104 S.Ct. 2052. Regarding a sentence to death, a defendant must show with reasonable probability that the jury, balancing all of the circumstances, would not have awarded the death penalty. *Id.* at 34, 104 S.Ct. 2052.

## III. Issues on Appeal

On appeal, Mr. Strong asserts eight points of error, which are reordered for ease of understanding. He claims that the motion court erred (A) in refusing to allow Mr. Strong to contact jurors following his trial to investigate and prove claims of ineffective assistance of counsel and juror misconduct. Mr. Strong also claims that the motion court erred in denying his claims that trial counsel was ineffective for failing to: (B) object to the state's peremptory strikes against venirepersons Stevenson and Bobo for religious reasons; (C) utilize a lack of deliberation defense during the guilt phase instead of the defense that the state had not proved guilt beyond a reasonable doubt; (D) object to the admission of out-of-court statements made by

Ms. Washington to the police before her death; (E) properly object to the prosecutor's use of a computerized slide show of photographs of the victims during the penalty phase; (F) investigate and present all reasonably available mitigating evidence in the penalty phase; and (G) present Mr. Strong's videotaped police interview during the penalty phase. He further asserts that the motion court erred (H) in denying his claim that Missouri's method of lethal injection constitutes cruel and unusual punishment.

## A. Denial of Post–Trial Interview of Jurors

■ Mr. Strong claims that the motion court erred in refusing to allow him to contact jurors following the trial to investigate and prove claims of ineffective assistance of counsel and juror misconduct. Post-conviction counsel filed a motion to "contact petit jurors" prior to the filing of an amended motion for relief. Mr. Strong states that such refusal is especially unfair because the motion court faulted him for failing to present the testimony of jurors in support of his post-conviction claim of prejudice resulting from the claimed ineffectiveness of counsel.[2]

In the court where Mr. Strong was tried, a local court rule prohibits an attorney or a party from contacting petit jurors without court permission. St. Louis County Local Rule 53.3. Pursuant to this rule, Mr. Strong sought permission from the court to contact the jurors, on the grounds that he anticipated raising two ineffective assistance of counsel claims—first, for counsel's failure to question the panel during voir dire regarding their ability to

remain fair and impartial after viewing gruesome photographs and, second, concerning the record made by trial counsel regarding the peremptory strikes used by the prosecution against Sylvia Stevenson and Luke Bobo. Post-conviction relief counsel also stated that after further review of the record he might identify additional claims. The motion court overruled the motion, stating that it would reconsider upon a showing of reasonable cause to believe, from actual factual allegations, that defendant's rights had been violated.

■ Mr. Strong has no inherent right to contact and interview jurors. Courts have discretionary power to grant permission for contact with jurors after a trial. *State v. Jones,* 979 S.W.2d 171, 183 (Mo. banc 1998). Additionally, his use of any information obtained from the jurors is limited, in that Missouri courts exclude juror testimony from consideration on post-judgment matters:

> The rule is perfectly settled, that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict.

*State v. Babb,* 680 S.W.2d 150, 152 (Mo. banc 1984). A post-conviction relief movant may not use the testimony of a juror to prove prejudice from his attorney's alleged incompetence because this would be permitting the juror to impeach the verdict, which is impermissible. *Franklin v. State,* 156 S.W.3d 507 (Mo.App.2005).

■ Although the rule prohibiting impeachment of a verdict "extends to juror conduct either inside or outside the jury

**2.** Post-conviction counsel filed a motion to contact the jurors who served in the case, not the venire members. The trial court noted that counsel did not present any evidence of prejudice occurring in the venire, and even if

counsel had been allowed to contact the jury members as he desired, he would still have no evidence of prejudice within the venire as a whole.

room, [a] limited exception exists. It is permissible to elicit testimony about juror misconduct that occurred outside the jury room, such as the gathering of extrinsic evidence...." *Storey v. State*, 175 S.W.3d 116, 130 (Mo. banc 2005) (internal citations omitted). While Mr. Strong makes a general allegation of juror misconduct, he fails to articulate any basis for suspecting juror misconduct. There is no support for this contention, and this appears to be a pretextual argument in an attempt to gain access to the jury's thought processes, an act that is strictly prohibited.

Even if Mr. Strong were to speak to former juror members, the information gathered would merely provide information as to the opinions of the jurors' regarding specific evidence. There is no indication how this information would relate to the peremptory strikes used against Ms. Stevenson or Mr. Bobo. Instead, the jurors' opinions would merely provide insight into their responses to the strategic decisions made by trial counsel.

There was evidence at the motion hearing that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy.[3] Counsel asked various detailed questions during voir dire, and all venire members were aware that the case involved stabbings and a young child. Defense counsel testified that he had never asked questions relating to photographs and mitigation during voir dire in other trials and that he believed that one could insult the intelligence of the venire members by suggesting the photographs alone

would prevent them from considering the evidence. Counsel also stated that he had never shown such photographs in voir dire as he did not desire to overemphasize the gruesome nature of the crimes or alienate the jurors by focusing on the nature of the offense.

Trial counsel provided a reasonable explanation for his decisions and trial strategy. His performance complies with the "degree of skill, care, and diligence of a reasonably competent attorney" as is required to avoid a finding of ineffective assistance. *Glass v. State*, 227 S.W.3d 463, 468 (Mo. banc 2007) (quoting *Hall*, 982 S.W.2d at 680). The motion court did not clearly err in denying counsel the opportunity to question jurors.

## B. Strikes of Venirepersons for Religious Reasons

Mr. Strong asserts that the motion court erred in denying his claim that trial counsel was ineffective for failing to raise religion-based *Batson* challenges to the State's peremptory strikes of Sylvia Stevenson and Luke Bobo.[4] At voir dire, Mr. Strong's trial counsel raised race-based *Batson* challenges to the State's peremptory strikes of Ms. Stevenson and Mr. Bobo, both African–American venirepersons. The trial court then asked the State to provide race-neutral explanations for the strikes.

With respect to Ms. Stevenson, the prosecutor explained that he removed Ms. Stevenson for several reasons: she seemed very unhappy with the idea of sequestra-

---

3. This Court presumes that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. *State v. Tokar*, 918 S.W.2d 753, 766, 768 (Mo. banc 1996).

4. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding

that Equal Protection Clause of Fourteenth Amendment forbids racial discrimination in the exercise of peremptory strikes); *see also J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (forbidding gender discrimination in use of peremptory strikes).

tion, she appeared disinterested, she did not appear to have any young children, she was weak on her ability to apply the death penalty, and counsel questioned her ability to apply the death penalty due to her references to both church and religion. The trial court found these reasons to be race-neutral. Defense counsel then asserted that Ms. Stevenson's religion and that she knew someone from the division of family services through church were merely pretextual explanations. The trial court found that the reasons were not pretextual and allowed the removal of Ms. Stevenson.

With respect to Mr. Bobo, the State asserted that:

> Mr. Bobo is the assistant dean of Covenant Seminary, and as much respect as I have for religious people, I don't want religious people, very religious, and I would have to assume because he's the dean of a seminary that he is a very religious person. I don't think he would make a particularly good death penalty juror in this case, but—or in any case for that matter. Although he indicated during the voir dire that he would impose the death sentence in an appropriate situation, he was not, certainly not as strong as I would like him to have been on that, combined primarily with his position as the assistant dean of Covenant Seminary. And he does have, as you mentioned up at the bench, a cousin in prison, I believe out in the Kansas City area. As I recall that was, I could be mistaken on this, but I think it was a murder and his cousin was in prison for murder.

The trial court found these reasons to be race-neutral. The court stated that "[m]ost importantly, the race-neutral reason the Court believes for striking Mr.

Bobo beyond the other reasons that Mr. McCulloch has mentioned is clearly that being the assistant dean, director of Covenant Seminary, which the Court is aware of, is a race-neutral reason." In response, Mr. Strong's trial counsel identified a Caucasian juror who had retired from teaching at a parochial school and asserted that the State's reason was therefore pretextual. The trial court found that the Caucasian juror was not similarly situated, however, because being an assistant dean and director of a seminary that teaches individuals to go into religious vocations is very different from teaching high school students at a parochial school. The trial court also found that Mr. Bobo was not similarly situated with the Caucasian juror because that juror did not have a cousin who went to jail for murder or a cousin who was shot while driving a car. The court found that:

> [T]he logical relevance between striking Mr. Bobo, who's assistant dean, director of a Covenant Seminary, and the relevance between that and the fact that the State of Missouri has elected to proceed with the death penalty, it's clear to the Court that individuals in often religious avocations are more apt to—it's a very relevant issue between those two and the effect that it would have upon an individual sitting in a case involving the death penalty.

Mr. Strong's trial counsel did not raise religion-based *Batson* challenges to the peremptory strikes of Ms. Stevenson and Mr. Bobo. Mr. Strong first challenged the constitutionality of religious-based strikes in his direct appeal, where he attempted to argue that the dismissal of Mr. Bobo on the ground that Mr. Bobo, as a religious person, would be less likely to impose the death penalty violates article I, section 5 of the Missouri Constitution.[5] *Strong*, 142

---

5. Article I, section 5 provides "that no person shall, on account of his religious persuasion

S.W.3d 702, 713 (Mo. banc 2004). This Court, however, found that Mr. Strong failed to preserve the claim for appellate review because it was not raised before the trial court. *Id.* This Court further found that Mr. Strong failed to demonstrate plain error. *Id.*

Mr. Strong also asserted on direct appeal that the prosecutor's statement that Ms. Stevenson's religious beliefs were perhaps another reason why she may be weak on the death penalty "violated equal protection by predicating [his] excuse upon her religious affiliation." *Id.* at 714. This Court again found that the constitutional argument was waived because it was not raised before the trial court, and that Mr. Strong did not establish plain error. *Id.*

Here, in his appeal from the denial of his motion for post-conviction relief, Mr. Strong asserts that his trial counsel was ineffective for failing to raise religion-based *Batson* challenges. The failure to preserve error for appellate review is not cognizable in a Rule 29.15 motion. *Everage v. State*, 229 S.W.3d 99, 102 (Mo. App.2007). Instead, post-conviction relief for ineffective assistance of counsel is limited to errors that prejudiced the defendant by denying him a fair trial. *State v. Thompson*, 955 S.W.2d 828, 831 (Mo.App. 1997). Trial counsel's failure to object to improper jury selection methods can, in appropriate circumstances, constitute ineffective assistance of counsel affecting the fairness of a criminal trial. *Scott v. State*, 183 S.W.3d 244, 247–48 (Mo.App.2005). Claims that trial counsel was ineffective for failing to raise a *Batson* challenge, therefore, are cognizable in a Rule 29.15 motion for post-conviction relief. *Id.*

In addition to a claim of ineffective assistance of counsel, Rule 29.15 allows "[a] person convicted of a felony after

trial [to claim] that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States...." Mr. Strong did not raise an independent constitutional claim outside the ineffective assistance context. This Court notes that, even if Mr. Strong were to raise such a claim on appeal of the denial of his post-conviction motion, it was not raised before the trial court. "A constitutional claim must be raised at the earliest opportunity and preserved at each step of the judicial process." *State v. Sumowski*, 794 S.W.2d 643, 648 (Mo. banc 1990).

*Batson* provides the procedural framework through which a party challenges the constitutionality of an opposing party's peremptory strikes. Therefore, the appropriate mechanism for claiming the improper removal of venirepersons under the provisions of the Missouri Constitution, like claims that peremptory strikes violate the Equal Protection Clause of the United States Constitution, is a *Batson* objection. As noted above, Mr. Strong's counsel never made a religion-based *Batson* objection. " '[B]oth the federal and state courts have consistently held that the failure to make a timely objection effectively waives any arguments based on improprieties in jury selection which the defendant might urge pursuant to *Batson*.' " *State v. Parker*, 836 S.W.2d 930, 935 (Mo. banc 1992) (quotation omitted). "Even a person convicted by an unconstitutionally composed jury must bring that claim to the attention of the trial court." *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. banc 1998) (citing *Davis v. United States*, 411 U.S. 233, 240, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973)). Further, trial counsel's race-based *Batson* challenges do not preserve a claim for religion-based dis-

or belief, ... be disqualified from testifying or serving as a juror."

crimination in the State's use of peremptory strikes. *See United States v. Brown,* 352 F.3d 654, 662 (2nd Cir.2003) (applying plain error review standard for defendant's claim that the prosecution improperly struck venireperson on the basis of her religion because defendant's race-based *Batson* challenge did not to preserve the religious discrimination claim).

■ In reviewing Mr. Strong's claim for ineffective assistance of counsel, this Court need not decide whether the prosecution's peremptory strikes were constitutionally prohibited. Even assuming that trial counsel's failure to object to the peremptory strikes on religious grounds was unreasonable, Mr. Strong must show that counsel's shortcomings were prejudicial. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. To satisfy the prejudice prong of the *Strickland* analysis, Mr. Strong must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Worthington,* 166 S.W.3d at 573. Demonstrating that the alleged error had some conceivable effect on the outcome of the trial is not sufficient. *Johnson v. State,* 189 S.W.3d 640, 645 (Mo. App.2006). Rather, Mr. Strong must show that, absent the alleged error, there is a reasonable probability that he would have been found not guilty. *U.S. v. Robinson,* 301 F.3d 923, 925 (8th Cir.2002). With respect to the sentencing phase, Mr. Strong needs to show a reasonable probability that the jury would have concluded that the death penalty was not warranted. *Anderson,* 196 S.W.3d at 33.

■ Mr. Strong does not attempt to establish *Strickland* prejudice. Instead, he asserts that trial counsel's failure to raise religion-based *Batson* objections to the State's peremptory strikes is a structural error that is presumptively prejudicial. Structural defects are "constitutional deprivations ... affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id.* (quotation omitted). One such structural defect is the trial by an adjudicator who is not impartial. *Id.* at 309, 111 S.Ct. 1246. Therefore, "where a criminal defendant is deprived of the right to a fair and impartial jury, prejudice therefrom is presumed." *Everage,* 229 S.W.3d at 102. "Nonetheless, in order to avail himself of this presumption, [the defendant] must establish that the errors complained of resulted in his trial by a jury that was not fair and impartial." *Id.*

Mr. Strong relies on this Court's decisions in *Knese v. State,* 85 S.W.3d 628 (Mo. banc 2002), and *Anderson v. State,* 196 S.W.3d 28 (Mo. banc 2006), for his claim that counsel's failure to raise religion-based *Batson* challenges was a structural defect because it deprived him of the right to a fair and impartial jury. In *Knese,* defense counsel failed to review questionnaires and voir dire two jurors who indicated on the questionnaires that they would automatically vote to impose the death penalty if the defendant was convicted of murder. 85 S.W.3d at 632. This Court found that "[t]his complete failure in jury selection is a structural error." *Id.* at 633. As such, defense counsel's failure was presumptively prejudicial, and the judgment was reversed as to the penalty phase. *Id.*

In *Anderson,* defense counsel failed to strike a juror who indicated that he would vote for the death sentence unless defense counsel could convince him otherwise. 196 S.W.3d at 39. This Court found that "[f]ailure to strike a juror that is unfit to serve because of such an improper predisposition is structural error," and "[a] death sentence imposed by a jury tainted with structural error must be vacated." *Id.* at 40. As such, defense counsel's performance denied the defendant his right to a fair and impartial jury and constituted ineffective assistance of counsel as to the penalty phase. *Id.* at 42.

Both *Knese* and *Anderson* are distinguishable from the case at bar. In those cases, defendants showed by a preponderance of the evidence that counsel's errors resulted in the empanelling of biased jurors, depriving the defendants of their right to a fair and impartial jury. In this case, however, Mr. Strong has not made such a showing. At most, Mr. Strong can only demonstrate that qualified venirepersons were excluded from the jury.

In *Young v. Bowersox,* the United States Court of Appeals for the Eighth Circuit directly addressed the question at issue. 161 F.3d 1159 (8th Cir.1998). On appeal from the denial of his petition for a writ of habeas corpus in federal district court, the defendant claimed that he received ineffective assistance because trial counsel failed to raise *Batson* challenges to the State's peremptory strikes of black venirepersons. *Id.* at 1160. Unable to

show *Strickland* prejudice, the defendant asserted that counsel's failure to raise a *Batson* challenge was a structural defect rendering the entire trial unreliable so that prejudice must be presumed. *Id.* The Eighth Circuit rejected defendant's claim. It reasoned that, despite the defendant's contention that showing a reasonable probability of a different outcome was impossible, under *Strickland,* "error by counsel does not warrant setting aside the judgment of a criminal proceeding on collateral attack if the error had no effect on the judgment." *Id.* at 1161. Since the defendant did not show a reasonable probability that the results of the proceeding would have been different had the black venirepersons been empaneled on the jury, the Court found that his ineffective assistance claim must fail. *Id.* The reasoning in *Young* is consistent with decisions of the Missouri court of appeals. *See Scott,* 183 S.W.3d at 248 ("a movant is entitled to a presumption of prejudice resulting from counsel's ineffective assistance during the jury selection process only if the movant can show that a biased venireperson ultimately served on the jury"); *State v. Colbert,* 949 S.W.2d 932, 944 (Mo.App.1997).

In accordance with these authorities, this Court holds that counsel's failure to raise a *Batson* objection, absent any attempt by Mr. Strong to demonstrate that unqualified persons served on the jury, does not amount to a structural defect that entitles him to a presumption of prejudice.[6]

---

**6.** The dissenting opinion concludes that structural error occurred when trial counsel failed to object to the state's religion-based preemptory strike of Venireperson Bobo. Importantly, the United States Supreme Court has never found that failure to raise a meritorious *Batson* challenge constitutes structural error, despite its recognition of the importance of a criminal defendant's right to a fair and impartial jury and a citizen's right to not be disqual-

ified from jury service in violation of the Constitution. Instead, as noted above:

Subsequent to *Batson,* "both the federal and state courts have consistently held that failure to make a timely objection effectively waives any arguments based on improprieties in jury selection which the defendant might urge pursuant to *Batson.*" Brian J. Serr & Mark Maney, *Racism, Peremptory Challenges and the Democratic Jury: The Jurisprudence of a Delicate Bal-*

This conclusion is consistent with this Court's finding of no plain error on direct appeal. Further, Mr. Strong makes no attempt to show that had counsel raised religion-based *Batson* objections, there is a reasonable probability that the outcome of the trial would have been different. Because Mr. Strong has failed to establish that trial counsel's alleged defects prejudiced him, the motion court did not error in denying his claim for ineffective assistance of counsel.

### C. Choice of Defense

■ Mr. Strong asserts that counsel should have chosen a different trial strategy during the guilt phase and asserts that trial counsel was ineffective for choosing to pursue a defense that the State had not proven appellant guilty beyond a reasonable doubt. He also states that the evidence of his involvement with the murders was overwhelming and that the only real question during the guilt phase concerned whether he deliberated. Finally, Mr. Strong suggests that his trial counsel was ineffective in not presenting the defense that Mr. Strong was guilty of second degree murder because he did not deliberate, a defense that Mr. Strong would have supported.

There is sufficient evidence to support the motion court's finding that the nature of the defense was a reasonable strategic decision of trial counsel. A defense of a lack of deliberation is premised on the mental state of Mr. Strong. Section 565.002, RSMo 2000 (defining deliberation as a cool reflection for any length of time

no matter how brief). Trial counsel testified at the motion hearing that he believed there was overwhelming evidence to contradict a defense of lack of deliberation. The evidence that was inconsistent with a defense of a lack of deliberation related both to the nature of the murders and to Mr. Strong's behavior during and after the murders. For example, during the murders, the telephone line was cut and Ms. Washington's 911 call was terminated. The nature of the wounds on the victims showed a measured and controlled attack. The number of wounds to both victims is also evidence that the attack took significant time, which would have given Mr. Strong time to reflect on his actions while committing the murders. While Mr. Strong savagely murdered Zandrea, he did not kill his own child who was in the room at the time. At no time did he call for medical help for the victims. When the police came to the home, Mr. Strong maintained his composure under questioning, which shows the ability to control his actions. Mr. Strong lied to the police as to what was happening, he changed his clothes after the murder, and he falsely stated that he had cut his hand when asked about the blood on him.

In addition, trial counsel stated that his choice of defense was an attempt to avoid opening the door during the guilt phase to any information that Mr. Strong had previously assaulted and threatened to kill both victims and that this weighed on his strategic decisions as to which defenses to pursue.

*ance*, 79 J.Crim. L. and Criminology 1, 19 (1988); *See, e.g., United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir.1992); *United States v. Masat*, 948 F.2d 923, 927 (5th Cir.1991); *State v. English*, 795 S.W.2d 610, 612 (Mo.App.1990); *People v. Lockhart*, 201 Ill.App.3d 700, 146 Ill.Dec. 1011, 558 N.E.2d 1345, 1350 (1990).

*Parker*, 836 S.W.2d at 935. This rule, which is firmly established in Missouri and other jurisdictions, is at odds with the conclusion that a criminal defendant's inability to raise a meritorious *Batson* challenge is so egregious as to be structural.

More importantly, contrary to his statement that he would have supported a defense of lack of deliberation, Mr. Strong failed to cooperate with his counsel and provided his attorney with numerous different versions of events. Mr. Strong once told his attorney that everything Mr. Strong told counsel was a lie, but trial counsel was unsure to what version of events Mr. Strong was referring. Mr. Strong also contended at times that Ms. Washington murdered Zandrea, not he.

Due to the bad facts of the murders of Ms. Washington and Zandrea and Mr. Strong's failure to cooperate, trial counsel faced extremely difficult strategic decisions. As counsel could not rely upon Mr. Strong's position to be consistent, choosing not to pursue a defense premised upon Mr. Strong's state of mind was a reasonable trial decision.

Once again, there was sufficient evidence to support the motion court's finding that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. See *Tokar*, 918 S.W.2d at 766, 768. Trial counsel articulated sound reasons for the strategic choices made.[7] As such, this Court will not find that the motion court erred in denying Mr. Strong's claim that trial counsel was ineffective for his strategic choices.

### D. Admission of Out–of–Court Statements of Victim

■ Mr. Strong alleges that the motion court erred in denying his claim of ineffective assistance of counsel on the basis that trial counsel should have objected to the reading of statements made by Ms. Washington to police regarding an earlier

assault on her by Mr. Strong. During the penalty phase, the prosecutor sought to introduce Ms. Washington's statements made to an officer at the scene of an assault by Mr. Strong against Ms. Washington approximately one year prior to her murder. The trial court allowed the prosecutor to submit Ms. Washington's excited utterances. Mr. Strong now asserts that trial counsel should have objected to the hearsay statements because they were inadmissible under the reasoning of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Prior to *Crawford*, courts focused on whether the out-of-court statements had adequate indicia of reliability to justify their admission. *Glass*, 227 S.W.3d at 472. In *Crawford*, the United States Supreme Court changed that analysis and held that testimonial out-of-court statements by a witness are barred by the Confrontation Clause unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53–54, 124 S.Ct. 1354. The United States Supreme Court further clarified the circumstances under which out-of-court statements are "testimonial" in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

Both *Crawford* and *Davis*, however, were decided after Mr. Strong's trial and conviction. In *Glass*, this Court faced an identical situation, wherein the defendant attempted to claim that counsel was ineffective for failing to object to the admission of evidence on the basis that it violated the defendant's Confrontation Clause rights under *Crawford*, but the alleged defect occurred before *Crawford* was de-

---

**7.** Mr. Strong points to various unpreserved claims due to lack of objections by trial counsel as support for the conclusion that counsel was ineffective. This Court, however, has never found that a failure to litigate a trial perfectly constitutes ineffective assistance of counsel, nor does this Court believe a "perfect" litigation to be possible.

cided. *Glass*, 227 S.W.3d at 472. This Court found that:

> In reviewing an ineffective assistance of counsel claim, counsel's conduct is measured by what the law is at the time of trial. Counsel will generally not be held ineffective for failing to anticipate a change in the law. [The defendant] was tried and convicted before the *Crawford* case was decided. In order to make the *Crawford* objection at trial, counsel would have had to anticipate the Supreme Court's holding in an opinion that had not yet been issued.

*Id.* (citations omitted).

Likewise, in this case, because trial counsel cannot be ineffective for failing to anticipate the holding of *Crawford* prior to its issuance, the motion court did not clearly err in denying Mr. Strong relief on this claim.

### E. Use of Computerized Slide Show

■ Mr. Strong argues that the motion court erred in denying Mr. Strong's claim that counsel was ineffective because counsel failed to preserve an objection to the prosecutor's use of a computerized slide show during the penalty-phase closing argument and counsel failed to record the reactions of the jury to this computerized slide show. The slide show incorporated photographs admitted into evidence and photographs of the victims.

In his direct appeal, Mr. Strong raised claims of error relating to both the admission of several photographs of Ms. Washington and Zandrea at the scene and during the autopsies and the state's utilization of a computerized slide show of the photographs in its penalty phase closing argument. *Strong*, 142 S.W.3d at 720. Mr. Strong's claim in his direct appeal was that "the prejudicial impact of these exhibits vastly outweighed their probative value as they were irrelevant and were admitted 'solely to engender passion and prejudice' and because 'their duplicative nature compounded the prejudice from each individual view.'" *Id.* This Court first addressed the claim of error in the admission of the photographs during the penalty phase and relied upon its ruling that there was no error in admitting them in the guilt phase. *Id.* This Court noted that "[t]he trial court has broad discretion in the admission of photographs" and that "[i]ts decision will not be overturned absent an abuse of discretion." *Id.* at 715.

The Court further reviewed the merits of Mr. Strong's claim that the trial court erred in allowing the admission of the computerized slide show and found that the trial court did not abuse its discretion in permitting the slide slow:

> Strong contends the computerized slide show was more prejudicial than probative because it resulted in the jury's being "bombarded with a host of graphic, color images." As Strong notes in his brief, the slide show depicted photographs of "Eva and Zandrea before the events in question; Eva and Zandrea at the scene and during the autopsies; the butcher knife and [Strong's mug shot], superimposed on the other images." Nearly all of the photographs contained in the slide show were previously admitted, and those not admitted lacked prejudice as they merely contained innocuous photographs of the victims. "Gruesome crimes produce gruesome, yet probative, photographs, and a defendant may not escape the brutality of his own actions." *State v. Wolfe*, 13 S.W.3d 248, 264 (Mo. banc 2000).

*Strong*, 142 S.W.3d at 720–21. This Court further held that Mr. Strong did not "establish that the slide presentation during closing argument prompted the jury to act other than on the basis of reason." *Id.* at 721.

On appeal of the denial of his motion for post-conviction relief, Mr. Strong asserts that his trial counsel was ineffective for failing to object to the admission of the photographs in the computerized slide show and argues that his counsel's failure to object resulted in plain error review in the direct appeal. This Court reviewed the merits of his claims of error in his direct appeal, and there was no indication that the review was limited to plain error. *Id.* at 720–21. Mr. Strong may not use post-conviction proceedings as "a vehicle to obtain a second appellate review of matters raised on direct appeal." *Wilkins v. State*, 802 S.W.2d 491, 497 (Mo.banc1991).[8] As such, the motion court did not clearly err in denying Mr. Strong relief on this claim.

### F. Failure to Present Mitigating Evidence

Mr. Strong asserts that the motion court clearly erred in failing to find trial counsel ineffective due to his failure to investigate and call certain mitigation witnesses in the penalty phase. Mr. Strong acknowledges that trial counsel presented mitigation evidence during the penalty phase that Mr. Strong was of good character. Nevertheless, he asserts that trial counsel was ineffective in failing to present evidence of Mr. Strong's complete social history and an explanation of how that social history impacted his behavior throughout his life and on the day of the murders. He claims that this evidence would show that his violent acts were the result of a violent, abusive, and traumatic life. Mr. Strong asserts

that a reasonably diligent attorney would have contacted witnesses to testify on these issues and utilized their testimony during the penalty phase.

 The choice of witnesses is ordinarily a matter of trial strategy and will not support an ineffective assistance of counsel claim. *State v. Harris*, 870 S.W.2d 798, 816 (Mo. banc 1994). Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 816–17 (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In addition, "the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

> To prevail on a claim of ineffective assistance of counsel for failing to call a witness, a defendant must show that: (1) trial counsel knew or should have known of the existence of the witness, (2) the witness could be located through reasonable investigation, (3) the witness would testify, and (4) the witness's testimony would have produced a viable defense.

*Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004).

Mr. Strong claims that trial counsel should have called his friend, Lamont Netter, to testify to his poor childhood.[9] Mr.

---

**8.** Mr. Strong further claims his counsel was ineffective for failure to record the jury's emotional response to the photographs. The record of the evidentiary hearing does not show that there was any emotional response by the jurors that counsel failed to record. More importantly, this claim was not made in Mr. Strong's amended motion and, therefore, will

not be addressed. *Sivigliano v. Harrah's North Kansas City Corp.*, 188 S.W.3d 46, 49 (Mo.App.2006) (emphasizing that the pleadings limit and define the issues of the case).

**9.** Trial counsel testified that he contacted many familial witnesses and that the information they provided him varied greatly from

Strong also asserts that trial counsel should have called experts such as Dr. Wanda Draper and Dr. Marilyn Hutchinson during the penalty phase to explain that the murders were caused by the uncontrollable mental illness Mr. Strong suffered due to his impoverished childhood filled with neglect, violence, and abuse.

■■■ Mr. Strong failed to identify Mr. Netter as a witness and, even if he did, there is no indication that the testimony would produce a viable defense. The record indicates that Mr. Strong was a very uncooperative and unhelpful client who hindered, as opposed to assisted, his attorneys.[10] Trial counsel located numerous witnesses and, in fact, called fifteen witnesses during the penalty phase, all of whom provided positive information about Mr. Strong. Mr. Strong's identification of one witness, whose name he did not provide and who could only provide information as to Mr. Strong's difficult childhood, does not demonstrate ineffective assistance.

■■■ Regarding the two experts, there was evidence to support the motion court's finding that trial counsel's decision not to utilize experts in this context was a valid trial strategy decision. Trial counsel stated that he relied on multiple witnesses who stated positive things about Mr. Strong as trial counsel attempted to demonstrate that Mr. Strong's life was worth saving. Counsel testified that he believed that the best strategy was to show Mr. Strong as a good man, able to do good things—not to blame Mr. Strong's actions

on a bad childhood. Trial counsel also expressed his belief that blaming Mr. Strong's actions on events in the distant past could appear to a jury as making excuses, which might alienate or offend a jury. "Trial counsel has nearly unfettered discretion as to what evidence to admit in presenting a case, as well as which witnesses to call." *Matthews v. State*, 175 S.W.3d 110, 116 (Mo. banc 2005). In light of counsel's beliefs, and the great discretion afforded him, trial counsel's failure to call experts, such as Dr. Draper and Dr. Hutchinson, is reasonable and within the discretion of counsel.[11]

Finally, Mr. Strong asserts that counsel should have asked different questions of his mother, Joyce Knox, and uncle, Wayne Garner, than those asked at trial. Once again, trial counsel's line of questioning demonstrates reasonable trial strategy and is within his discretion. *See id.*

The record demonstrates a thorough investigation by trial counsel into mitigation evidence and, given the information received from his investigation, he proceeded in a reasonable manner. Nothing about trial counsel's strategy indicates any failure to utilize the skill, care, or diligence of a reasonable attorney. The trial court's denial of the claim of ineffective assistance of counsel was not clear error.

### G. Failure to Present Video of Police Interview

■■■ Mr. Strong claims that trial counsel was ineffective for failing to present,

---

that allegedly provided to post-conviction counsel.

10. Mr. Strong repeatedly gave contradictory accounts of what happened to counsel, refused psychological examinations, denied any signs of depression, impairment, or psychiatric problems, and failed to provide accurate information to his attorneys.

11. In addition, the motion court found the testimony of Dr. Draper and Dr. Hutchinson to be that of "paid experts with a biased opinion," that their opinions were "limited" and based on "one-sided information," and that "neither expert would have benefited or been helpful" to Mr. Strong.

during the penalty phase, a videotaped statement that Mr. Strong made to police. In the statement, Mr. Strong admitted that he "must have killed" the victims. He also stated he was sorry but did not know why he was sorry. The tape was filled with contradictory statements.

Trial counsel stated that showing the video during the penalty phase would have been inconsistent with counsel's guilt phase strategy and would have made the jury think that the "wool was getting pulled over their eyes." Trial counsel noted that Mr. Strong blamed Ms. Washington for killing Zandrea, denied the killings, and stated he did not remember the murders during the videotaped statement. Trial counsel felt there was too much negative information to utilize the videotape during the penalty phase.

The record demonstrates that trial counsel acted professionally in making decisions, and trial counsel's decision not to seek admission of a video containing many contradictory statements fails to establish ineffective assistance of counsel.

## H. Constitutionality of Lethal Injection

Mr. Strong asserts the motion court erred in denying his claim that Missouri's method of lethal injection constitutes cruel and unusual punishment. He states that Missouri's method and protocol results in extreme pain, prolonged suffering, and torture during the execution process. Mr. Strong presented no evidence in support of these assertions.

Furthermore, when a condemned person has not yet exhausted his appeals, it is premature to consider a claim involving the method of execution, as "it is unknown what method, if any, of lethal injection may be utilized by the State of Missouri at such future time, if any, as [Mr. Strong's] right to seek relief in state and federal courts is concluded and his execution date and method are set." *Worthington v. State,* 166 S.W.3d 566, 583 n. 3 (Mo. banc 2005). As such, even if Mr. Strong's claim contained merit, it is not yet ripe.

## IV. Conclusion

For the foregoing reasons, this Court finds that the motion court did not clearly err in denying Mr. Strong's motion for post-conviction relief. The judgment of the motion court, therefore, is affirmed.

PRICE, LIMBAUGH and RUSSELL, JJ., concur; WOLFF, J., dissents in separate opinion filed; STITH, C.J., and TEITELMAN, J., concur in opinion of WOLFF, J.

## DISSENTING OPINION

MICHAEL A. WOLFF, Judge.

On the basis of his religion, the state struck a prospective juror. This action, which the trial court approved, violated the right of the venireperson to participate in the judicial process. This violation of the venireperson's right to be free of religious discrimination, which Strong may raise, is so fundamental to a trial's legitimacy that a trial marred by such error must be deemed inherently prejudiced. This error, which is structural, affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself.

In its analysis of Strong's argument that venireperson Luke Bobo was unconstitutionally struck from the jury pool because of his religious beliefs, the majority correctly concludes that the issue is to be considered a claim of ineffective assistance of counsel. *See* Rule 29.15(d).

The *Strickland* standard is used to evaluate claims of ineffective assistance, as the majority notes. *Strickland* establishes a two-part test necessary to sustain such a claim: a Rule 29.15 movant must establish "(1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced." *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The "prejudice" prong requires an appellant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Citing *Strickland*'s caution that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed," the majority does not engage in a substantive analysis of the first *Strickland* prong—trial counsel's failure to exercise customary diligence—and instead focuses on the prejudice analysis. *Id.* at 697, 104 S.Ct. 2052. The majority ultimately concludes that Strong has "failed to establish that trial counsel's alleged defects prejudiced him" and affirms the motion court's denial of Strong's claim of error.

Because this claim raises a question of structural error that goes to the legitimacy of the trial process, I do not agree with the majority that Strong's claim of ineffectiveness may be disposed of on grounds of insufficient prejudice. It is, therefore, necessary to examine the first *Strickland*

prong, that is, the claim of counsel's failure to exercise customary skill and diligence.

A brief factual review of the state's questioning during *voir dire* and defense counsel's conduct during the *Batson*[1] conference in question will be of use in determining "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. During *voir dire,* the prosecutor had this discussion with venireperson Bobo:

**Mr. McCulloch:** ... do you feel there are situations, an evidentiary set of circumstances, in which death would be an appropriate punishment in a murder first degree case?

**Venireman Bobo:** Sure.

**Mr. McCulloch:** And if the Judge were to give you that instruction, that question, assess and declare the punishment at death or life without parole, would you be able to consider both of those?

**Venireman Bobo:** Yes.

**Mr. McCulloch:** Would you be able to impose the one you felt was appropriate punishment for this case?

**Venireman Bobo:** Based on the evidence, yes.

At the conclusion of *voir dire,* the state used a preemptive strike against venireperson Bobo, who was the assistant dean of Covenant Seminary. Defense counsel raised a *Batson* challenge to the strike on race grounds. In keeping with the dictates of *Batson,* the trial court asked the state to supply a race-neutral reason for striking Bobo. The prosecutor indicated that Bobo

---

1. All references to *Batson* are drawn from the Supreme Court's decision in *Batson v. Kentucky,* in which the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

... was the assistant dean of Covenant Seminary, and as much respect as I have for religious people, I don't want religious people, very religious, and I would have to assume because he's the dean of a seminary that he is a very religious person. I don't think he would make a particularly good death penalty juror in this case, but—or in any case for that matter. Although he indicated during the voir dire that he would impose the death sentence in an appropriate situation, he was not, certainly not as strong as I would like him to have been on that, combined primarily with his position as the assistant dean of Covenant Seminary. And he does have, as you mentioned up at the bench, a cousin in prison, I believe out in the Kansas City area. As I recall that was, I could be mistaken on this, but I think it was a murder and his cousin was in prison for murder.

The trial court overruled defense counsel's *Batson* challenge, finding that the prosecutor had race-neutral reasons for striking Bobo: "Most importantly, the race-neutral reason the Court believes for striking Bobo beyond the other reasons that Mr. McCulloch has mentioned is clearly that being the assistant dean, director of Covenant Seminary, which the Court is aware of, is a race-neutral reason." When defense counsel pointed out that a similarly situated juror was a retired parochial school teacher, the trial court found that the state's reasons were not pretextual, saying:

... the logical relevance between striking Bobo, who's assistant dean, director of a Covenant Seminary, and the relevance between that and the fact that the State of Missouri has elected to proceed with the death penalty, it's clear to the Court that individuals in often religious avocations are more apt to—it's a very relevant issue between those two and

the effect that it would have upon an individual sitting in a case involving the death penalty.

The prohibition against excluding potential jurors from service on the basis of their religious beliefs is explicitly articulated in the Missouri Constitution. Article I, Section 5 of the Missouri Constitution provides in part that "no person shall, on account of his religious belief ... be disqualified from ... serving as juror." In addition to this Constitutional provision, there is a wealth of case law, both federal and Missouri, holding that religion may not be used as a basis for striking a potential juror. *See, e.g., State v. Roberts*, 948 S.W.2d 577 (Mo. banc 1997); *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). While most such rulings involve challenges for cause, the same principle applies in this case because it was the action of the state in exercising a peremptory challenge. *J.E.B. v. Ala. ex rel. T.B*, 511 U.S. 127, 128, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (holding that the Equal Protection Clause of the Fourteenth Amendment governs the exercise of peremptory challenges by a prosecutor in a criminal trial). Moreover, the trial court, also of course an arm of the state, endorsed the religious basis for excluding Bobo.

In a challenge for cause, this Court in *State v. Roberts* observed that "[v]enirepersons may not be excluded simply because of general objections to the death penalty or conscientious or religious scruples against it. Venirepersons may be excluded *only where it appears that their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and their oath.*" 948 S.W.2d at 597 (em-

phasis added). Further, the United States Supreme Court has held that a capital defendant's right to an impartial jury under the Sixth and Fourteenth Amendments of the United States Constitution prohibits the exclusion of venire members "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Gray v. Mississippi,* 481 U.S. 648, 657, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987) (citing *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)); *see also State v. Ervin,* 979 S.W.2d 149, 155 (Mo. banc 1998) ("Under the Sixth Amendment right to an impartial jury, a trial court cannot strike venirepersons simply because they voice general objections to the death penalty."); *State v. Kreutzer,* 928 S.W.2d 854, 866 (Mo. banc 1996).

As *Gray* and *Witherspoon* make clear, barring a religious juror from service, even a juror who has expressed ambivalence regarding the death penalty, is constitutionally impermissible. Indeed, in this case, far from approaching the *Gray* and *Witherspoon* levels of ambivalence regarding the death penalty, Bobo's statements during *voir dire* were unambiguous; he expressed no reservations about his ability to be objective, to follow the law and to impose the death sentence if appropriate "based on the evidence."

At the point in *Batson* conference at which the state said it "[*did not* ] want religious people" serving on the jury, the state violated the Missouri Constitution, a violation that defense counsel did not object to or comment upon. When the trial court made its observation that a juror's religiousness was a valid race-neutral basis for exclusion, reasonably competent trial counsel should have interposed and drawn the trial court's attention to Missouri's explicit constitutional bar to just such exclu-

sions, as well as the federal constitutional principles.

Strong's defense trial counsel, in a deposition for the Rule 29.15 motion hearing, testified that he was not aware of any case law holding that religion was not a valid reason for striking a venireperson. In that deposition, defense trial counsel also made no mention of the provision of the Missouri Constitution barring such strikes. "[W]hen defense counsel fails to raise a possible defense, to make a suppression motion, or to take some other possibly beneficial action, and such failure is due to his ignorance or mistaken understanding of the law, which reasonable preparation would have corrected, the defendant has received ineffective assistance of counsel." 5 Am.Jur.2d *Acts or omissions of counsel constituting ineffective assistance—Ignorance of rule of law* sec. 7 (2008).

Strong's trial counsel stood silent as both the state and the trial court ignored a basic precept of the Missouri constitution. That silence is precisely the sort of failure "to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances" against which *Strickland* guards. By failing to draw the trial court's attention to any one of the numerous legal problems with using religion as a "race-neutral" reason for a preemptory strike, Strong's trial counsel fell below the necessary level of effectiveness.

Establishing the second *Strickland* prong—prejudice—is not quite as clear-cut a task. The typical *Strickland* prejudice formulation requires that a movant show that but for his counsel's error, the outcome of the proceeding would have been different. Here, that task is impossible. Strong cannot conceivably show that had Bobo been placed on his jury, the outcome of his jury trial would have been different. Any arguments in that vein would be pure

conjecture and would carry no legal weight.

With the prejudice analysis foreclosed to him, Strong invokes the *Arizona v. Fulminante* structural error standard. Structural errors are those violations of constitutional protections so fundamental to a trial's fair outcome that any trial marred by such error must be deemed inherently prejudiced. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Structural errors are those errors "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Id.* (citing *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Where structural error has been committed, the defendant does not have to demonstrate that the outcome of his trial would have been different but for the error. Prejudice is presumed. *Everage v. State*, 229 S.W.3d 99, 102 (Mo.App.2007).

In its discussion of structural error, the majority frames the issue as a Sixth Amendment question, relying on the well-accepted view that the deprivation of the right to a fair and impartial jury constitutes structural error. *See Knese v. State*, 85 S.W.3d 628, 633 (Mo. banc 2002). The majority then goes about the not-difficult task of dismissing Strong's structural error argument as distinguishable from Missouri precedents holding that "in order to avail himself of this presumption [of prejudice resulting from deprivation of the right to a fair and impartial jury], [the defendant] must establish that the errors complained of resulted in his trial by a jury that was not fair and impartial." *Everage*, 229 S.W.3d at 102.

The majority is correct that in Missouri case law a structural error committed in impaneling the jury has been discussed only in the context of defense counsel's failure to strike a biased juror. *See, e.g., Knese, supra; Everage, supra, Anderson v. State*, 196 S.W.3d 28 (Mo. banc 2006). The majority also surmises that because Strong objects not to his trial counsel's failure to strike a biased venireperson, but rather, to counsel's failure to *object* to the *prosecution's striking* of a venireperson, he cannot prove that those venirepersons who were placed on the jury were not fair and impartial. Having summarily dispatched Strong's argument by distinguishing it from existing precedent, the majority concludes that "counsel's failure to raise a *Batson* objection, absent any attempt by Strong to demonstrate that unqualified persons served on the jury, does not amount to a structural defect that entitles him to a presumption of prejudice."

So what then is the state of affairs as the majority's analysis leaves them? Bobo was barred from sitting on a jury in violation of protections given him by the Missouri constitution, and Strong was tried by a jury seated in a constitutionally prohibited manner. Strong cannot prove that his trial might have had a different result but for the violation, nor can he prove that the jury that heard his case was biased.

The constitutional violation is grave, and yet neither wronged party—Bobo as well as Strong—can be given redress by the outcome-dependent formulations of the majority. But it is this very sort of harm that the doctrine of structural error exists to remedy. The fallacy in the majority's reasoning lies with its too-narrow conception of structural error, and it is the deficiencies of this conception that produce such an incorrect and unjust result.

First, the majority works on the premise that the only right in question is Strong's

right to a fair and impartial jury. The majority ignores the implications of its decision on the rights of Bobo. In *Powers v. Ohio*, the Supreme Court held that "a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race." 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Because the majority conceptualizes this issue as a deprivation of Strong's right to a fair and impartial jury, the absence of demonstrable prejudice proves an absolute bar to redress, disregarding Bobo's right to serve free of religious discrimination.

The majority might well rejoin that no Supreme Court case has extended equal protection to religion under *Batson*. While that is true, the constitutional violation at issue here is that of the protection guaranteed under the Missouri Constitution. As Judge Price observed in his concurrence in *State v. Parker*:

> [t]he elevated protection ... of the rights of individuals to serve as jurors may extend beyond racial discrimination to religious, gender-based, or ethnic discrimination as well, either under the United States or the Missouri Constitutions. Interestingly, the Missouri Constitution may require greater protection of the right of an individual to serve on a petit jury than does the United States Constitution. While our Missouri Constitution includes similar equal protection language to that in the United States Constitution, stating: "that all persons are created equal and are entitled to equal rights and opportunity under the law"; *article I, section 2*, it provides further and more specific rights to individuals regarding jury service. *Article I, section 5*, provides "that no person shall on account of his religious persuasion or belief ... be disqualified from testifying or serving as a juror".... Thus, whether *Batson, Powers, Edmonson and McCollum* directly prohibit the

use of peremptory strikes based upon religion or sex, they certainly suggest such a result when coupled with Missouri's Constitution.

836 S.W.2d 930, 941–943 (Mo. banc 1992) (Price, J. concurring). In the present case, the Court has the opportunity to answer the question raised by Judge Price in *Parker*. The language of Missouri's constitution is plain: No citizen shall be disqualified from jury service on the basis of religious belief. Bobo is just such a citizen, and it is the deprivation of his rights that the majority's analysis ignores.

The second problem with the majority's understanding of structural error is its view of the doctrine as a finite and exclusive list of enumerated violations that amount to structural error. Because Strong cannot demonstrate that the constitutional violation produced a biased jury, the majority holds that the error is not structural. The theory of structural error is that when a constitutional violation is sufficiently egregious, the integrity of the judicial process is so gravely compromised that no outcome of such a tainted proceeding could conceivably be just. Courts have long recognized the hazards created by discrimination in the jury selection process. In *J.E.B.*, the Supreme Court described the effect of discriminatory jury selection practices:

> "Discrimination in jury selection ... causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process. The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings.... The community is harmed by the State's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our judicial system that state-sanctioned discrimination in the courtroom engenders."

511 U.S. at 140, 114 S.Ct. 1419. This description of the impact of discriminatory jury selection mirrors the very description of structural error cited by the majority: Structural errors are those "affecting the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246.

Structural error cannot be limited, as the majority in this case holds, to an exclusive list of named rights held only by the named defendant. By correctly applying the structural error doctrine, however, this Court can remedy harm that the state's religious discrimination caused the litigants, the community and venireperson Bobo, who was, as the Supreme Court stated in *J.E.B.*, "wrongfully excluded from the judicial process." *J.E.B.*, 511 U.S. at 140, 114 S.Ct. 1419.

The majority declines to apply the law of structural error to remedy the constitutional violation in this case. The remedy is a new trial free of the constitutional violation that tainted this trial. I respectfully dissent.